IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARLAND MURRAY

      Plaintiff,

v.           CIVIL ACTION NO. 2:18-cv-00942

RALPH TERRY, et al.,

      Defendants.

MEMORANDUM OPINION AND ORDER

I. Introduction

Pending before the court is Plaintiff's Motion for Emergency Preliminary Injunction [ECF No. 10]. The defendants responded [ECF Nos. 15, 16]. For the reasons stated herein, the Motion is **DENIED**.

II. Factual and Procedural Background

The plaintiff, Garland Murray, is an inmate at Mount Olive Correctional Complex ("MOCC"). Compl. ¶ 3 [ECF No. 1]. On May 17, 2018, the plaintiff filed this action against twelve named MOCC employees and John Doe Correctional Officers. *Id.* ¶¶ 4–6. The Complaint contains seven counts: (1) excessive force in violation of the Eighth Amendment, (2) inadequate conditions of confinement in violation of the Eighth Amendment, (3) retaliation in violation of the First Amendment, (4) assault

and battery, (5) intentional infliction of emotional distress, (6) negligence, and (7) spoliation. *Id.* ¶¶ 89–170

Over the past five years, the plaintiff has filed several lawsuits regarding incidents at MOCC. Pl.'s Mot. for Emer. Prelim. Inj. 1 [ECF No. 10]. The plaintiff believes that MOCC employees are currently retaliating against him for these lawsuits. *Id.* at 1–2. The plaintiff alleges that in November 2017, without being provoked, MOCC correctional officers sprayed him with pepper spray and then beat him. *Id.* at 2. Shortly after this incident, MOCC correctional officers allegedly pepper sprayed the plaintiff again, hit his head against a sink multiple times, and held his head under hot water, which exacerbated the effects of the spray. *Id.* MOCC officers then left the plaintiff in a solitary confinement cell in his wet, contaminated clothing overnight. *Id.*

The plaintiff alleges that MOCC employees also told other inmates that he "requested protective custody, thus indicating that he was a 'snitch.'" *Id.* at 3. According to the plaintiff, in January 2018, inmates placed feces outside and underneath his cell door. *Id.* MOCC staff then refused to clean it. *Id.* Because of his complaints about the feces, the plaintiff was moved to a different cell, which allegedly did not have drinkable water. *Id.* The plaintiff was left in this cell for nearly two weeks, during which time his only source of water was his toilet. Compl. ¶¶ 76–83. Additionally, on more than one occasion during this period, MOCC staff dumped the plaintiff's food trays onto the floor. *Id.* ¶ 84. Lastly, the plaintiff alleges that MOCC

staff placed him near racist inmates who are associated with his 2013 stabbing at MOCC. Pl.'s Mot. 3.

Aside from the allegation that MOCC staff placed the plaintiff near racist inmates, the factual allegations in the Motion repeat those outlined in the Complaint. The plaintiff claims that he now suffers from anxiety, depression, and fear, along with physical injuries. *Id.* The plaintiff has repeatedly requested to be transferred to a different facility, but his requests have been denied. *Id.* at 3–4.

On July 12, 2018, the plaintiff filed a motion for an "emergency preliminary injunction." *Id.* at 1. The Motion requests that the court enter a preliminary injunction ordering that the plaintiff be transferred from MOCC to a different West Virginia Division of Corrections ("WVDOC") facility. *Id.*

On July 17, 2018, the plaintiff filed a Notice of Supplemental Evidence in Support of Plaintiff's Motion for Emergency Injunction [ECF No. 14]. The Notice states that there is additional evidence attached as "Exhibit D," but the plaintiff failed to attach anything to the Notice. The Notice states, however, what the attachment supposedly shows. First, it says that it "sets forth one example of Plaintiff's attempts to be transferred to a facility" and defendant Ralph Terry's response that he "will be housed where WVDOC deems applicable and appropriate." Notice 1. Second, it says that Exhibit D shows that the plaintiff was subjected to "further intimidation" on July 16, 2018. *Id.* Specifically, the plaintiff alleges that:

> [he] was suddenly called into a meeting at MOCC in the
> private security room where [he] was previously beaten

3

> which has no video cameras. At least two defendants who were involved in [his] beating, Defendants Smith and Richards, were sitting with other officers in the room. Upon seeing Defendants and the location of the meeting, [he] immediately advised the officer who had escorted him to the meeting that he felt unsafe and he was escorted back to his unit, considerably shaken. [He] has confirmed that he has no outstanding disciplinary matters that would have led to said meeting.

Notice 1–2 (citations omitted).

In their response, the defendants submitted an incident report dated July 14, 2018, that describes how the plaintiff ripped down a memo which was hanging on the wall and wadded it up. Defs.' Resp. Ex. D, at 1 [ECF 16-4]. According to the defendants, the July 16 meeting was to discuss this incident. Defs.' Resp. 4–5.

### III. Analysis

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Id.* at 20.

"[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Barnett v. Young*,

No. 5:18-cv-279, 2018 WL 3405415, at *2 (S.D. W. Va. June 21, 2018). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 38 (2002).

"Ordinarily, preliminary injunctions are issued to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir.2003)). These are known as "prohibitory injunctions." Here, the plaintiff seeks not to preserve, but instead to alter the status quo by requesting transfer from MOCC to a different WVDOC facility. Pl.'s Mot. 1. This type of injunction is known as a "mandatory injunction." Courts disfavor mandatory preliminary injunctions, and they are "warranted only in the most extraordinary circumstances." *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012). Consequently, courts considering a mandatory injunction must give an "even more searching" review of the factors articulated in *Winter*. *Id.*

Starting with the second *Winter* element, the plaintiff must demonstrate that he is *likely* to suffer irreparable harm in the absence of an injunction. As an initial matter, the July 2018 incident described in the supplemental motion actually favors finding that the plaintiff is not likely to suffer irreparable harm. According to the plaintiff's own allegations, at the start of the meeting, "[he] immediately advised the officer who had escorted him to the meeting that he felt unsafe and he was escorted

5

back to his unit." Notice 2. This shows that the defendants listened to his concerns and complied with his requests—not that the plaintiff is likely to suffer irreparable harm. Additionally, contrary to the plaintiff's allegations, the defendants submitted evidence that this meeting was to discuss the plaintiff's recent behavioral write up. Defs.' Resp. 4–5. Thus, there have been no alarming incidents in six months. It is not enough to have "a *possibility* of irreparable harm," and the plaintiff's allegations and the alleged timeline of events do not leave the court with the view that the plaintiff is *likely* to suffer irreparable harm. *See Winter*, 555 U.S. at 20–22.

The plaintiff must prove all four *Winter* elements in order to be entitled to a preliminary injunction. Since he failed to demonstrate the second element, that he is likely to suffer irreparable harm in the absence of preliminary relief, he is not entitled to a preliminary injunction.

## IV.   Conclusion

Plaintiff's Motion for Emergency Preliminary Injunction is **DENIED without prejudice**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   July 23, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE