IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

Garland Murray

                Plaintiff,

v.                               CIVIL ACTION NO. 2:18-cv-00942

Devon Lilly; William Sumpter;
Donald Slack; James Smith;
and Richard Toney,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendants William Sumpter, Devon Lilly, Donald Slack, James Smith, and Richard Toney's motion for summary judgment [ECF No. 131]. The Plaintiff filed a response [ECF No. 140], and the Defendants filed a reply [ECF No. 143]. The matter is ripe for adjudication. For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part**.

I.     **Background**

This case involves officers' treatment of Mr. Garland Murray, while he was incarcerated at Mount Olive Correctional Complex (MOCC). On or around November 20, 2017, Defendants Lilly and Sumpter took Murray to a control unit for a urine drug screening, based on smoke and an odor emanating from his cell. Def. Lilly et. al. Mot. Summ. J., Ex. 3 at 14–21 [ECF No. 131–3] ("Lilly Dep."). The parties agree that

while in the control unit, Defendants sprayed Murray, without warning, in the face and head with oleoresin capsicum (pepper spray), through the slot in the door. *Id.* at 23–25; *see also* Def. Lilly et. al. Mot. Summ. J., Ex. 1 [ECF No. 131–1] ("Incident Reports"). And that the officers then used some degree of takedown force against Murray. Incident Reports [ECF No. 131–1]. The parties further agree that Murray was subsequently taken to the medical unit, placed in a shower fully clothed, and then escorted to the recreation yard, where the Defendants sprayed his face with water. *Id.* There is video recording beginning with Murray in the shower and ending with the Defendants terminating decontamination efforts at the recreation yard. Def. Lilly et. al. Mot. Summ. J., Ex. 8 [ECF No. 131–8]. However, there is no other video evidence of these events, including most importantly, the circumstances that lead to the deployment of force and pepper spray. Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. K [ECF No. 140–11].

### a. Plaintiff's version

The Plaintiff contends that he was unable to urinate for the drug test while in the control unit. Def. Lilly et. al. Mot. Summ. J., Ex. 4 at 54–56 [ECF No. 131–4] ("Pl.'s Dep."). He thus tapped on the cell window, requesting a water bottle to assist him in his ability to urinate. *Id.* Murray asserts that Defendant Lilly opened the slot to the cell and held a water bottle as if he was going to hand it to him. *Id.* But when Murray squatted down to take the bottle, the Defendant Smith sprayed him in the face with pepper spray. *Id.* at 56–61. The Plaintiff contends that at no point prior to

the use of the pepper spray was he posing a threat to himself, others, or property; rather he was locked alone, secured in a cell. *Id.*

The Plaintiff contends that immediately after being sprayed in the face, the Defendants ordered him to place his hands behind his back through the slot to be cuffed. *Id.* at 63–62. Once Murray complied, Defendants Lilly, Slack, Sumpter, and James Smith, shoved the door open, tackled Murray to the ground, bashed his head on the floor, kneed, and punched him. *Id.* Murray maintains that he did not provoke this use of force. *Id.*

The Plaintiff asserts that the Defendants then took him to the medical unit, where they refused his multiple requests to have his injuries photographed. *Id.* at 58; Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. S [ECF No. 140–19]. The Defendants subsequently placed him, fully clothed, in a scalding hot shower, which exacerbated his physical discomfort and prevented him from effectively removing the pepper spray. Pl's Dep. at 14 [ECF No. 131–4]. Murray was then taken to a sink in the recreation area, where hot water was sprayed in his face. *Id.* at 17. The Defendants then took Murray to a solitary confinement cell, where they left him in his wet clothing and still covered with pepper spray. *Id.* at 60. His cell also did not contain bedding or a mattress. *Id.* He was not given fresh clothing, bedding, or a mattress until the following day, despite his numerous requests for such items. *Id.*

### b. Defendants' version

The Defendants tell a strikingly different story. Defendants contend that Murray refused the urinary drug test. Incident Reports [ECF No. 131–1]. And

3

repeatedly struck the cell door and window with his fists, despite the officers' commands for him to stop. *Id.* After multiple verbal efforts to deescalate Murray's actions, the Defendants determined deploying pepper spray was necessary to prevent Murray from injuring himself or property. *Id.* Officer Lilly opened the slot and Officer Smith deployed two to three ½ second bursts of pepper spray. *Id.* Defendants then cuffed Murray through the slot and entered the cell to extract him. Lilly Dep., at 32 [ECF No. 131–3]. Defendants contend that Murray attempted to head-butt the officers and ignored verbal commands to stop resisting. *Id.* at 32–34. Defendants conducted a "control takedown," in which Defendants made physical contact with Murray and "placed him on the floor." *Id.* at 32–34. Defendants argue that while on the floor Plaintiff attempted to kick them. *Id.* Defendants maintain that the Plaintiff was not tackled, was not injured, and continued to fight the control of the Officers throughout the takedown process. *Id.* at 36.

Defendants assert that Murray refused medical treatment, refused to remove his contaminated clothing once placed in the shower, and refused orders to self-decontaminate, despite being given time to shower, unrestrained by handcuffs. Incident Reports [ECF No. 131–1]. After taking Murray to the shower, the Defendants took him to the recreation yard to further decontaminate at a sink. *Id.* Officer Smith tested the water temperature on his own wrist. *Id.* The Defendants maintain that the water was not hot, notwithstanding the Plaintiff's allegations. *Id.* The Defendants claim they ceased decontamination at the Plaintiff's request. *Id.*

4

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("[d]isposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The

nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

Before turning to the merits of Murray's claims, I find it necessary to address the Defendants' assertion throughout their briefs that Murray may not rely upon his own self-serving allegations to overcome summary judgment and that he has offered no other evidence to corroborate his allegations. Testimony by a plaintiff of events of which he has personal knowledge is sufficient to overcome summary judgment. *See Cantrell v. Rubenstein*, No. 2:14-CV-17419, 2016 WL 5723601, at *7 (S.D.W. Va. Aug. 23, 2016), report and recommendation adopted, No. 2:14-CV-17419, 2016 WL 5660339 (S.D.W. Va. Sept. 29, 2016). It is difficult to imagine what other evidence besides his own testimony Murray could offer to show his version of the key events, as there were no witnesses other than the Defendants to the use of force. Moreover, the video camera used to record the crucial moments of the incidents allegedly malfunctioned.

Additionally, the Plaintiff does offer evidence other than his own allegations, including incident reports, medical records, photographs of his injuries, prison policy directives addressing permissible uses of force, and prison policy directives addressing video recording policies.

III. Discussion

Defendants Slack, Sumpter, Lilly, Toney, and James Smith move for summary judgment as to all claims made against them in the Complaint: (Count I) Eighth Amendment violations based on excessive use of force brought under § 1983; (Count III) First Amendment retaliation brought under § 1983; (Count IV) Assault & Battery[1]; (Count V) Intentional Infliction of Emotional Distress; (Count VI) Spoliation. Def. Lilly et. al. Mot. Summ. J. [ECF No. 131]. The Defendants also move for summary judgment on the Plaintiff's request for injunctive and declaratory relief. *Id.* Additionally, the Defendants seek qualified immunity on the § 1983 claims. *Id.*

### a. Eighth Amendment (Excessive Force) and Qualified Immunity

In Count I, the Plaintiff alleges that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force. Compl. ¶ 89. The Defendants argue their actions do not amount to a violation and that they are entitled to qualified immunity. Def. Lilly et. al. Mot. Summ. J. [ECF No. 131].

Section 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his or her constitutional or federal rights. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "immunity is a threshold issue which the court addresses before considering any of the defendants'

---

[1] The Plaintiff does not assert Count IV, assault & battery, against Defendant Toney. [ECF. No. 140 at 2, n.1].

proffered substantive bases for summary judgment." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 768 (S.D. W. Va. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thus, the court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the Plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the answer to either question is no, then the Defendants are entitled to qualified immunity.

1. Constitutional Violation

First, viewing the evidence in the light most favorable to Murray a reasonable jury could find that the Defendants' conduct violated the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. "In the prison context, it 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). The pertinent Eighth Amendment analysis requires both an objective and subjective inquiry. *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014). The plaintiff must

8

show that the deprivation suffered, or injury inflicted, was sufficiently serious (objective component). *Id.* And the plaintiff must establish that the prison officials acted with a sufficiently culpable mental state (subjective component). *Id.*

The objective component of an excessive force claim has a low threshold. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). This component does not require an inmate to prove a significant injury or even an injury that requires medical attention. *Id.* The objective component merely requires more than a de minimis use of force. *See id.* Thus, the extent of the injury is not dispositive. *Id.*

To satisfy the subjective component of this test, the plaintiff must show that the officials applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014). In *Whitley*, the Court, outlined multiple factors to consider in determining whether the force satisfies the subjective component of the test: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Id.*

In analyzing these factors, the Fourth Circuit has established that deploying pepper spray can qualify as excessive force. *See Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 239–40 (4th Cir.2008). However, the use of chemical agents is not a *per se* constitutional violation. *Williams*, 77 F.3d at

763. "Mace can be constitutionally used in small quantities to prevent riots and escapes or to control a recalcitrant inmate." *Id.* Nonetheless such chemical agents are inherently dangerous, and their use should be "closely scrutinized" under the totality of the circumstances. *Id.* Using chemical agents in quantities greater than necessary, or for the sole purpose of inflicting pain, constitutes malicious behavior, satisfying the subjective component of an Eighth Amendment violation. *Id.* Likewise, using pepper spray on a docile or compliant prisoner, or depriving a prisoner of a proper opportunity to fully decontaminate, including forcing them to remain in their contaminated clothes, demonstrates maliciousness and qualifies as excessive force. *Iko*, 535 F.3d at 232.

I find that there are several material facts in dispute concerning whether the Defendants used excessive force against Murray. The Plaintiff's excessive force claim turns on the nature and circumstances in which the officers deployed the pepper spray and took him down in the cell, which are in dispute. At the summary judgment stage, the court may not weigh the credibility of the officers' testimony against the Plaintiff's testimony.

There are two instances in which force was used: (1) deploying the pepper spray and (2) the takedown contact. The Plaintiff offers sworn testimony in a deposition and in an affidavit that he was compliant, and posed no threat to officer safety, his own safety, or to property, when the officers deployed pepper spray and takedown force. ECF. No. 131–4; ECF. No 140 Ex. P. Murray's testimony also indicates that during the incident, the officers were taunting Murray about previous

grievances and lawsuits he has filed against the prison, making statements such as, "Oh this is the guy… He's going to learn about filing lawsuits today." ECF. No. 131–4 at 31, 54–55.

Viewing the evidence in the light most favorable to the Plaintiff, there is a clear dispute as to whether there was a need for the application of pepper spray. Given the Fourth Circuit precedent in *Iko*, that it is unconstitutional to pepper spray a docile non-resisting inmate, a reasonable jury could find that the Defendants here maliciously deployed pepper spray against Murray.

The Defendants sprayed Murray when he was locked alone in a cell. There is no evidence that he was threatening to harm himself or any of the officers. There is no evidence that shows that Murray caused any property damage in the cell. The angle of the spray and location of the injury further confirms that the use of pepper spray was unjustified. Murray was sprayed directly in the face and eyes. Lilly's Dep., at 31 [ECF No. 131–3]; Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. I [ECF No. 140–9]. The angle—interpreted in the light most favorable to Murray—suggests that he was bent down with his face by the slot when he was sprayed. This fact supports his version of events that the Defendants baited him to "squat down to get the water bottle" through the slot. Pl.'s Dep., at 56 [ECF No. 131–4].

Under the evidence interpreted most favorably to Murray, the Defendants' essentially pepper sprayed an isolated prisoner through an opening in a locked door, while he was unable to attack any officer, and had given no indication he would hurt himself. These facts create a reasonable inference that the officers sprayed Murray

to punish him, for the sole purpose of causing him pain—conduct that certainly satisfies the subjective component of an Eighth Amendment violation as outlined in *Williams*.

Additionally, taking Murray's evidence in the light most favorable to him, there is a dispute of fact as to whether he had proper opportunity to decontaminate. Like in *Iko*, here the defendant's failure to change Murray's clothing is material to the officers' subjective intent. Therefore, I find that there are material disputes of facts as to whether the pepper spray constituted excessive force.

Finally, there is a material dispute of fact as to whether the takedown force was constitutionally justified versus excessive. Murray contends that he was compliant and did not resist commands. It is undisputed that at the time of the takedown Murray was handcuffed behind his back and he could not see due to the pepper spray. Moreover, the amount of force the officers used is in dispute. The *Whitley* factors illustrate that the amount of force and the justification for the use of force are central in determining whether officer actions are constitutional. Thus, I cannot award summary judgment for the Defendants on this issue.

### 2. Clearly Established Law

Turning to the second step of the qualified immunity analysis, the right at issue was "clearly established" at the time of Defendants' alleged misconduct. "When determining whether a right was 'clearly established,' '[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Mack v. Turner*, No. 5:15-03589, 2016 WL 7840216, at *6 (S.D. W. Va. Dec. 13, 2016) (quoting

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "To be 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As previously discussed, the Fourth Circuit has repeatedly held that prison officials violate the Eighth Amendment when they "use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain," fail to fully decontaminate the prisoner post-deploying chemical agents, and use pepper spray on a docile inmate. *Id.* at 240. This court has continually denied qualified immunity at the summary judgment stage in similar cases involving guards at MOCC deploying pepper spray against inmates. *See e.g.*, *Taylor v. Rubenstein*, No. 2:13-CV-33339, 2016 WL 5539594, at *6 (S.D.W. Va. Sept. 28, 2016); *Cantrell v. Rubenstein*, No. 2:14-CV-17419, 2016 WL 5723601, at *28 (S.D.W. Va. Aug. 23, 2016); *Harper v. Blagg*, No. 2:13-CV-19796, 2015 WL 6509131, at *13–*14 (S.D.W. Va. Oct. 28, 2015).

Accordingly, having found genuine dispute of fact as to whether the Defendants violated Murray's Eighth Amendment rights and that the law was clearly established at the time of the alleged violation, I **FIND** that the Defendants are not entitled to qualified immunity on Murray's excessive force claim. The court therefore **DENIES** Defendants William Sumpter, Devon Lilly, Donald Slack and James Smith's motion for summary judgment on Count I.

### b. Bystander liability claim against Defendant Toney

In Count I, the Plaintiff also asserts a claim of an Eighth Amendment violation of excessive force against Defendant Toney under a bystander liability theory.

The Fourth Circuit "recognizes a cause of action for bystander liability 'premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" *Stevenson v. City of Seat Pleasant, Maryland,* 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting Randall v. Prince George's Cty., Maryland, 302 F.3d 188, 203 (4th Cir. 2002)). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204.

It is undisputed that Defendant Toney was not present during the events up to and including the deployment of pepper spray. Def. Lilly et. al. Mot. Summ. J., Ex. 7 at 25:1–18 [ECF No. 131–7] ("Toney Dep."); Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., 12 [ECF No. 140]. Nor was Defendant Toney present when the officers allegedly tackled Murray to the ground. Toney Dep., at 25:1–18 [ECF No. 131–7]. However, Defendant Toney was present while Murray was on the floor in the control unit immediately after the takedown. *Id.*

Drawing all inferences in the light most favorable to the Plaintiff, Defendant Toney witnessed a group of officers physically restraining Murray while he already was handcuffed and incapacitated from the pepper spray. The Plaintiff has not demonstrated enough evidence to show that Defendant Toney *knew* he was

witnessing a constitutional violation. Even if Defendant Toney witnessed the officers using force against Murray, that is insufficient to satisfy this element of bystander liability. The Plaintiff's evidence that Murray did not provoke the officers to use pepper spray and takedown force is central in creating a dispute of fact as to whether the force was excessive. The Plaintiff's admits, Defendant Toney did not witness the circumstances that caused the officers to use such force. Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., 12 [ECF No. 140]. Defendant Toney was not aware that Murray never threatened officers or himself, or whether he complied with officers' commands. Therefore, it was reasonable for defendant Toney to believe that the officers were justified in their use of physical contact.

Therefore, the court **GRANTS** Defendants' motion for summary judgment on the excessive force claims against Defendant Toney under bystander liability.

### c. First Amendment

The Plaintiff's First Amendment retaliation claim in Count III was previously dismissed by stipulation. ECF No. 142. Therefore, the Defendants' motion for summary judgment on this claim is **DENIED as moot.**

### d. Assault and Battery

Plaintiff asserts a claim for assault and battery in Count IV of his complaint against Defendants Lilly, Slack, Sumpter, and James Smith.

In West Virginia, a person is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person

of the other directly or indirectly results." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015) (quoting Restatement (Second) of Torts § 13 (1965)). A person is liable for assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Id.*

An activity, however, that would otherwise subject a person to liability in tort for battery or assault does not constitute tortious conduct if the actor is privileged to engage in such conduct. *Hutchinson v. West Virginia State Police*, 731 F.Supp.2d 521, 547 (S.D.W. Va. 2010) (citation omitted). "A privilege may be based upon ... the fact that its exercise is necessary for the protection of some interest ... of the public which is of such importance as to justify the harm caused or threatened by its exercise." Restatement (Second) of Torts § 10 (Am. Law Inst. 1965).

As discussed above, there are genuine issues of material fact concerning Defendants' use of force. Construing the evidence in a light most favorable to the Plaintiff, I find a jury could determine that Defendants used excessive force by deploying pepper spray and in tackling Murray when he was handcuffed—already incapacitated from pepper spray. If Defendants' use of pepper spray and takedown force is determined to be excessive, then a jury could find their conduct would be offensive and harmful, reasonably precluding a finding of privilege as to Plaintiff's battery and assault claims. Therefore, the court **DENIES** the Defendants' motion for summary judgment on the assault and battery claims.

### e. Intentional Infliction of Emotional Distress

Murray asserts a claim for intentional infliction of emotional distress ("IIED") in Count V of his complaint against Defendants Lilly, Slack, Sumpter, Toney, and James Smith. To prevail on an IIED claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044, at *16–17 (S. D. W. Va. Feb. 6, 2018). These elements present a high bar to recovery. *See Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991) ("conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct."). In analyzing the first factor, a court can "consider whether the extreme and outrageous character of the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998).

Here, Murray has not presented enough evidence to create a material dispute of fact as to the elements of an IIED claim. Although the Plaintiff claims that he suffered humiliation and anxiety related to the force used against him, he has not offered any testimony or medical documentation of these emotional injuries. He has

17

failed to proffer sufficient evidence that he has suffered the degree of emotional distress required to meet the fourth IIED element.

For these reasons, the court **GRANTS** the Defendants' motion for summary judgment on the IIED claim.

### f. Injunctive relief

The Defendants' motion for summary judgment asserts that Murray's claims for declaratory and injunctive relief are moot. "When a case or controversy ceases to exist because the issue is no longer live or a party lacks a legally cognizable interest in the outcome preventing the court from granting effective relief; the claim becomes moot, and the court lacks constitutional authority to adjudicate the issue." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The Fourth Circuit has clearly held that a prisoner's transfer from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007); *see also Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986) (same).

Murray is no longer incarcerated at MOCC. Therefore, his requests for injunctive and declaratory relief against the Defendants in this case are moot. Thus, the court **GRANTS** the Defendants' motion for summary judgment as to the Plaintiff's request for injunctive and declaratory relief.

## IV. Conclusion

For the reasons stated herein it is hereby ordered the Defendant's motion for summary judgment [ECF No. 131] is **GRANTED in part** and **DENIED in part**. The Defendant's motion is **GRANTED** as to Count I (42 U.S.C. § 1983 –Excessive Force) against Defendant Toney, Count V (IIED), and the Plaintiff's request for declaratory and injunctive relief. The Defendant's motion is **DENIED** as to Count I (42 U.S.C. § 1983) against Defendants Lilly, Slack, Sumpter, and James Smith, and Count IV (Assault and Battery). The Defendant's motion for summary judgment on Count III (First Amendment) and Count VII (Spoliation) are **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: September 26, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE