IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

Garland Murray

        Plaintiff,

v.                                          CIVIL ACTION NO. 2:18–cv–00942

Nathan Withrow; Corporal Taylor;
and Lieutenant Hill

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants Nathan Withrow, Corporal Taylor, and Lieutenant Hill's motion for summary judgment [ECF No. 135]. The Plaintiff, Garland Murray, filed a response [ECF No. 141], and the Defendants filed a reply [ECF No. 144]. The matter is ripe for adjudication. For the reasons stated herein, the Motion is **GRANTED** on all counts.

### I.    Background

This case involves the Defendants' treatment of Mr. Garland Murray during his incarceration at Mount Olive Correctional Complex (MOCC). On or around November 20, 2017, officers sprayed Murray with oleoresin capsicum (pepper spray). Compl. ¶ 13 [ECF No. 85]. These Defendants were not engaged in the use of pepper spray. However, the aftermath of that use of force is relevant to these Defendants.

The parties agree that after Murray was sprayed with pepper spray, officers took him to a solitary confinement cell where they left him in his wet clothing, contaminated with pepper spray. Compl. ¶ 45–47 [ECF No. 85]. His cell did not contain bedding or a mattress, and he did not receive fresh clothing, bedding or a mattress until the following day, despite numerous requests. *Id.* Murray alleges that Defendant Withrow punished him for requesting these items by writing him up for "compromising an employee"[1] which led to his prolonged stay in solitary confinement. Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. D [ECF No. 140–4].

Murray asserts several issues with the conditions of his cell. First, he contends that Defendant Withrow publicized to other inmates that he sought protective custody, thus labeling him a snitch. Def. Lilly et. al. Mot. Summ. J. Ex. 4 at 35–37 [ECF No. 131–4] ("Pl's Dep."). Murray claims that inmates subsequently "piled human feces outside of and under" his cell door, which the Defendants did not remove. *Id.* at 37; Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. P [ECF No. 140–16]. Second, he claims that the sink in his cell was broken, resulting in unusable water. Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. O, Ex. P [ECF No. 140–15, 16]. Thus, he claims that his only access to liquid was a small amount of milk, coffee, or juice given to him at meals, or water from his toilet. Pl's Dep. at 39–40 [ECF No. 131–4]. Third, he claims that Defendant Withrow dumped his food on the floor, deprived

---

[1] The State of West Virginia Division of Corrections defines "compromising an employee," stating in relevant part: "[n]o inmate shall aid, abet, incite, encourage, or otherwise attempt to aid, abet, incite, or encourage any employee of the West Virginia Regional Jail and Correctional Facility Authority… to engage in violations of … policies and procedures, jeopardize security, engage in poor work performance, or otherwise violate applicable laws or regulations." State of West Virginia Division of Corrections, Policy Directive, No. 325.00 R. 1.25 (Feb. 1, 2012).

2

him of food, and threatened him not to make any more complaints about the conditions of the prison. Pl's Dep. at 31 [ECF No. 131–4]; Pl.'s Resp. Opp'n Def. Lilly et. al. Mot. Summ. J., Ex. M [ECF No. 140–13].

The Defendants acknowledge that Murray did not receive bedding, a mattress, or clean clothes until the day after being placed in solitary confinement. Def. Lilly et. al. Mot. Summ. J., Ex. 3 at 45–48, Ex. 4 at 49–52 [ECF No. 131–3, 4]. The Defendants further acknowledge that the sink in the Plaintiff's cell was broken. Def. Withrow et., al. Mot. Summ. J., Ex. 2 [ECF No. 135–2]. However, they contend in response to Plaintiff's grievance, the sink was fixed within approximately two weeks. Def. Withrow et., al. Mot. Summ. J., Ex. 1, Ex. 2 [ECF No. 135–1, 2]. The Defendants deny that Defendant Withrow publicized comments about Plaintiff's protective custody request. Def. Withrow et., al. Mot. Summ. J., 8. The Defendants further assert that Defendant Withrow did not deny the Plaintiff food, throw his food on the ground, or threaten him about making further complaints. *Id.*

I. **Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact–finder could return a verdict for the non–movant." *Runyon v.*

3

*Hannah*, No. 2:12–1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("[d]isposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non–movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

II. Discussion

Defendants Withrow, Taylor, and Hill move for summary judgement as to all claims made against them in the Complaint: (Count II) violations of the Eighth Amendment based on conditions of confinement under 42 U.S.C. § 1983; (Count V) Intentional Infliction of Emotional Distress; and (Count VI) Negligence. The Defendants raise qualified immunity as a defense to the Eighth Amendment claim (Count II) and the Negligence claim (Count VI).

a. Eighth Amendment and Federal Qualified Immunity

Section 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his or her constitutional or federal rights. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "immunity is a threshold issue which the court addresses before considering any of the defendants' proffered substantive bases for summary judgment." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 768 (S.D. W. Va. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thus, the court must undertake a two–part inquiry: (1) viewing the facts in the light most favorable to the Plaintiff, the court must determine if there was a

constitutional violation; and (2) if so, whether the right violated was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the answer to either question is no, then the Defendants are entitled to qualified immunity.

First viewing the evidence in the light most favorable to Murray, a reasonable jury could not find that the Defendants' conduct violated the Eighth Amendment. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). This punishment includes prisoner's conditions of confinement. *Id.* The Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). For example, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). The Constitution, however, "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 297. Only deprivations denying "the minimal civilized measure of life's necessities," are sufficiently grave to qualify as Eighth Amendment violations. *Id.*

Courts analyze an Eighth Amendment claim under a two–step test, which examines both an objective and subjective component. *Id.* To satisfy the objective component, the plaintiff must demonstrate that his or her conditions of confinement caused a sufficiently serious injury "or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To satisfy the subjective

component, the plaintiff must prove that the officers acted with deliberate indifference towards an inmate's health or safety. *Id.* Deliberate indifference entails more than mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Shakka,* 71 F.3d at 166. Circumstantial evidence can establish this scienter requirement. *Farmer*, 511 U.S. at 842. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Temporary deprivations of hygiene products, mattresses, and bedding do not rise to the level of an Eighth Amendment violation. *Ash v. Greenwood*, No. 2:17–CV–03022, 2018 WL 4201398, at *6 (S.D.W. Va. Aug. 30, 2018). To find a constitutional violation for such deprivations requires egregious conditions that offend the basic notions of human decency. *See e.g.*, *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989) (holding that denying an inmate's request for dry bedding did not constitute an Eighth Amendment violation); *but see*, *Putney v. Likin*, 656 F. App'x 632, 636 (4th Cir. 2016) (finding that a prisoner plausibly stated a claim for an Eighth Amendment violation because the prison denied him a mattress for four months, creating a substantial risk of harm); *Wright v. McMann*, 387 F.2d 519, 521 (2d Cir. 1967) (finding an Eighth Amendment violation where the prison denied the plaintiff all hygiene products, placed him in a filthy solitary cell without heat in the middle of winter, and forced him under the threat of violence to remain standing from 7:00 am to 10:00 pm).

Here, Murray has failed to set forth sufficient evidence showing a serious injury stemming from his conditions of confinement, thus failing to demonstrate the objective prong of the test. The injuries that the Murray sustained were caused by the use of pepper spray and takedown force (bruising, red and irritated eyes, skin rash, edema on head, etc.). The Plaintiff has not provided evidence, besides his own self–serving statements, that these injuries worsened due to his conditions of confinement or that he developed new injuries. Further, because the broken faucet and the deprivation of bedding were for a short timeframe, Murray has failed to show a substantial risk of injury.

Taking the evidence in the light most favorable to the Plaintiff, Murray has also not satisfied the subjective prong of the Eighth Amendment standard. Turning to the most troubling accusation, that Murray temporarily did not have potable water, the evidence does not support a finding of deliberate indifference. Work orders from the prison, marked as Defendants' Exhibit 1, demonstrate that maintenance resolved the problem with the faucet on February 12, 2018. Def. Withrow et., al. Mot. Summ. J., Ex. 1 [ECF No. 135–1]. This exhibit establishes that the prison addressed Murray's maintenance request within two weeks. For this period, Murray was provided beverages at mealtimes. Murray has not provided sufficient evidence tying the lack of water in his cell for two weeks to Defendants Withrow, Taylor, and Hill. Even assuming there was a delay in fixing his faucet, Murray has not shown that these Defendants are responsible for the delay. Nor has he provided enough evidence that these Defendants ignored his grievances about his faucet. Therefore, Murray has

8

failed to establish the subjective prong of his conditions of confinement claim.

Additionally, Murray offers only speculation as to the Defendants' involvement in causing other inmates to put feces under his cell. Pl's Dep. at 37 [ECF No. 131–4]. In his deposition, Murray acknowledges that he never overheard Defendant Withrow and Officer Jesse Smith (who is no longer a Defendant) telling other prisoners about him. *Id.* at 36. Nor could he identify the names of any inmates who had put the feces under his door. *Id.* 36–37. The Plaintiff fails to offer corroborating evidence on this issue. Thus, the bare allegations on this point are inadequate to survive summary judgment.

Finally, as this court previously found in *Ash*, depriving a prisoner of bedding and a mattress for 24 hours cannot serve as the basis for an Eighth Amendment claim under either the subjective or objective prong. Additionally, even assuming Defendant Withrow threw Murray's food trays on the floor, this behavior—while unprofessional and disrespectful—does not rise to the level of deliberate indifference.

Second, even if there was an Eighth Amendment violation, the right at issue was not "clearly established" at the time of Defendants' alleged misconduct. "When determining whether a right was 'clearly established,' '[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Mack v. Turner*, No. 5:15–03589, 2016 WL 7840216, at *6 (S.D. W. Va. Dec. 13, 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "To be 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v.*

9

*Creighton*, 483 U.S. 635, 640 (1987)).

In this case, there is insufficient precedent to show that the Defendants violated Murray's clearly established rights. The Fourth Circuit has not held that temporary deprivations — such as a 24–hour denial of bedding or a two–week period without potable water in a cell — rise to the level of an Eighth Amendment violation. Having found that the Defendants' conduct did not constitute a constitutional violation and that the law was not clearly established the Defendants' are entitled to qualified immunity on this claim. Therefore, the court **GRANTS** the Defendants' motion for summary judgement on the Plaintiff's Eighth Amendment claim.

### b. Intentional Infliction of Emotional Distress

The Defendants also seek summary judgment on Count V of the Plaintiff's complaint asserting intentional infliction of emotional distress (IIED).

To prevail on an intentional infliction of emotional distress ("IIED") claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Miller v. Rubenstein*, No. 2:16–CV–05637, 2018 WL 736044, at *16–17 (S.D.W. Va. Feb. 6, 2018). These elements present a high bar to recovery. *See Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991) ("conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean–spirited, or negligent does not

constitute outrageous conduct."). In analyzing the first factor, a court can "consider whether the extreme and outrageous character of the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998).

Here, Murray has not presented enough evidence to create a material dispute of fact as to the elements of an IIED claim. Even considering the Defendants relative position of authority over him, Murray presents only his own speculation as to the Defendants mental state. Moreover, although Murray claims that he suffered humiliation and anxiety, he has not offered any corroborating testimony or medical documentation of these emotional injuries. Nor has he demonstrated the degree of emotional distress he suffered. The distress Murray endured — from having his food trays dumped on the floor a couple times, his temporarily broken faucet, and the 24-hours he spent without a mattress or bedding — was not so severe that no reasonable person could be expected to endure it. For these reasons, the court **GRANTS** the Defendants' motion for summary judgment on the IIED claim.

### c. Negligence and State Qualified Immunity

The Defendants also move for summary judgment on Count VI of the Plaintiff's complaint, which alleges negligence. In West Virginia, to prevail in a negligence suit the plaintiff must establish: (1) a duty owed to the plaintiff; (2) a breach of that duty; (3) and injuries received resulting proximately from the breach of that duty. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016).

Under state law, qualified immunity bars liability for officer's negligent acts. *Lavender v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. CIV. A. 3:06–1032, 2008 WL 313957, at *9 (S.D.W. Va. Feb. 4, 2008). "If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision." *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014); *see also Clark v. Dunn*, 465 S.E.2d 374, 380 (W. Va. 1995). Therefore, even if Murray has alleged a sufficient basis for his negligence claim, the Defendants herein are immune from liability. The court thus **GRANTS** the Defendants' motion for summary judgment on the negligence claim.

### III. Conclusion

The Defendants' motion for summary judgment [ECF No. 135] is **GRANTED** on all claims. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 26, 2019

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE